IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHLEEN J. TODD, | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 15-2866 |
| | : | |
| U.S. BANK, NATIONAL | : | |
| ASSOCIATION et al., | : | |
| Defendants. | : | |

Jones II,       J.                                                        January 11, 2016

**<u>MEMORANDUM</u>**

Upon consideration of Defendant U.S. Bank, National Association ("U.S. Bank")'s Motion to Dismiss, (Dkt No. 32), and Memorandum of Law in support thereof, (Dkt No. 32 [hereinafter U.S. Bank MTD]), Defendant McCabe, Weisberg & Conway, P.C. ("MWC")'s Motion to Dismiss, (Dkt No. 33), and Memorandum of Law in support thereof, (Dkt No. 33-1 [hereinafter MWC MTD]), Kathleen J. Todd ("Plaintiff")'s Response to both Motions, (Dkt No. 34 [hereinafter Resp.].), U.S. Bank's Reply Brief in support of its Motion to Dismiss, (Dkt No. 40 [hereinafter U.S. Bank Rep.]), MWC's Reply Brief in support of its Motion to Dismiss, (Dkt No. 39 [hereinafter MWC Rep.]), and Plaintiff's Sur-Reply in opposition to Defendants' Motions, (Dkt No. 41 [hereinafter Pl. Sur-Rep.]), it is hereby ORDERED that Defendants' Motions are GRANTED. Plaintiff's Complaint is DISMISSED.

## I.       Standard of Review

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation and citation omitted). After the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more

than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks omitted).

## II.   Background

On September 26, 2005, Plaintiff borrowed $50,001.00 from Argent Mortgage Company, LLC ("Argent") and secured the loan with a mortgage (the "Mortgage") on her residence, 5745 Lauder Street, Pittsburgh, Pennsylvania. (Dkt No. 25 [hereinafter AC] ¶¶ 3, 7, 13; Dkt No. 25, Ex. A [hereinafter Mortgage].) Throughout the decade since this mortgage was recorded, the mortgage was assigned multiple times. This interest is represented in this litigation by U.S. Bank.[1] For simplicity, the Court will uniformly refer to the various parties representing this interest across the life of this case as "the Trustee." MWC served as counsel to the Trustee during the relevant events.

On or about March 1, 2008, Plaintiff allegedly defaulted on the Mortgage. (AC ¶ 16.) On August 7, 2008, the Trustee commenced a foreclosure action against Plaintiff in the Allegheny County Court of Common Pleas. (AC ¶ 16; Dkt No. 25, Ex. C [hereinafter Foreclosure Compl.]; Dkt No. 25, Ex. K [hereinafter State Dkt].) The Foreclosure Complaint demanded an amount comprising principal balance, interest, attorneys' fees, late charges, and corporate advances totalling $53,055.65. (AC ¶ 17; Foreclosure Compl. ¶ 8.) The Foreclosure Complaint demands "interest at the rate of $13.53 per diem and other costs and charges collectible under the mortgage and for the foreclosure and sale of the mortgaged property." (Foreclosure Compl. ¶ 9.)

The Mortgage includes provisions related to the lender's rights to collect certain attorneys' fees and expenses:

> *Lender may charge Borrower fees for services performed in connection with Borrower's default*, for the purposes of protecting Lender's interest in the Property and rights under this Security Instrument, *including, but not limited to, attorneys' fees*, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a

---

[1] On December 24, 2007, Argent assigned the Mortgage to Mortgage Electronic Registrations Systems, Inc. ("MERS"). (AC ¶¶ 12, 14-15; Dkt No. 25, Ex. B.) Effective on July 5, 2007, MERS assigned the interest to LaSalle Bank N.A. ("LaSalle"). (AC ¶ 28; Dkt No. 28, Ex. G.) On or about October 17, 2008, LaSalle merged into and operated as part of Bank of America, National Association ("BOA"). (AC ¶¶ 9, 24, 28; Dkt No. 25, Ex. D.) On or about December 30, 2010, U.S. Bank acquired BOA's securitization trust administration business. (AC ¶ 29; Dkt No. 25, Ex. H.)

prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

[...]

*Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees* and costs of title evidence to the extent permitted by Applicable Law.

(Mortgage ¶¶ 14, 22 (emphasis added).)

Plaintiff failed to appear and defend the action. (State Dkt.) On December 9, 2008, the Prothonotary entered a default judgment against Plaintiff in the amount of $54,976.91. (AC ¶ 22; State Dkt.)[2] On June 16, 2009, Plaintiff received her first notice of the foreclosure action, when she received an Act 91 Notice sent by the Trustee. (AC ¶ 25; Dkt No. 25, Ex. E.)

On July 27, 2009, MWC filed a Praecipe for Writ of Execution in the Court of Common Pleas of Allegheny County in the amount of $57,685.91. (AC ¶ 27; Dkt No. 25, Ex. F [hereinafter Praecipe]; State Dkt.) This amount comprised the default judgment ($54,976.91) and interest dating from the entrance of the default judgment to the prospective date of sale of the property. (Praecipe.)

On July 5, 2011, October 25, 2012, September 19, 2013, and May 23, 2014, on behalf of the Trustee, MWC filed Praecipes to Reissue the Writ of Execution. (AC ¶¶ 30, 37; Dkt No. 25, Ex. I [hereinafter Praecipes to Reissue].)[3] Plaintiff correctly notes that each writ demanded accrued interest through dates that had not yet occurred: the July 5, 2011 demanded interest through September 6, 2011, the October 25, 2012 demanded interest through January 7, 2013, the September 19, 2013 demanded interest through December 2, 2013, and May 23, 2014 demanded interest through August 4, 2014. (AC ¶¶ 30, 38; Praecipes to Reissue.) However, all of these future dates are labeled as the "DATE[S] OF SALE." (Praecipes to Reissue.) In review of all of the praecipes to reissue, the Court finds that all of the reissued writs demanded Plaintiff's payment of the default judgment amount plus accrued interest from December 10, 2008 (the day after the default judgment was entered) until the scheduled date of the sheriff's sale.

---

[2] Pennsylvania Rule of Civil Procedure 1037(b) contemplates that "[t]he prothnotary, on the praecipe of the plaintiff, shall enter judgment against the defendant for failure" to defend the complaint. Thus, entrance of the default judgment by the Prothonotary was typical procedure.

[3] In Pennsylvania, a sheriff's sale is dependent on a valid writ of execution. *See* Pa.R.C.P. § 3180(a).

There are multiple reissuances of the writ of execution of the default judgment to correspond to the postponement and rescheduling of the sheriff's sale. The state court granted Plaintiff's numerous motions for continuances of the sheriff's sale. (State Dkt.) Additional postponements reflected rescheduling of the sheriff's sale due to the property's failure to sell at previous sales. (State Dkt.) On March 3, 2015, the Trustee caused a Release of Mortgage to be filed with the Recorder of Deeds office. (AC ¶ 31; Dkt No. 25, Ex. J.)

Plaintiff did not petition the state court to open or strike the default judgment. She did not appeal the default judgment. In addition, Plaintiff never challenged any of the writs of execution issued against the property. She never petitioned the court to set aside any of the scheduled sheriff's sales. *See* Pa.R.C.P. § 3132. This case is Plaintiff's first action related to this underlying action.

Plaintiff filed her first Complaint with this Court on May 22, 2015, (Dkt No. 1), and Amended Complaint on September 16, 2015. (AC.) The Amended Complaint is a putative class action representing former or current homeowners who obtained financing secured by a first mortgage on a residential property less than $231,111 located within the Commonwealth of Pennsylvania, where the Trustee or MWC charged, collected or attempted to collect post-judgment fees, cost, and interest before that interest had accrued and before those fees and costs had been awarded by an Article V court, within a period of six years from May 23, 2014. (AC ¶ 44.)

First, under Count I, Plaintiff alleges that U.S. Bank "breached its Mortgage obligations to Ms. Todd and the class by charging and/or collecting foreclosure fees and costs in violation of the terms of the standardized mortgages with Ms. Todd and members of the class." (AC ¶ 57.) Specifically, Plaintiff argues that the default judgment, and subsequent writs of execution, incorporated the attorneys' fees demanded in Defendants' Foreclosure Complaint, even though the Foreclosure Complaint "failed to provide information evidencing the legal time expended, hourly, rates, or when legal services were performed…" (AC ¶ 19.) "[T]hrough the foreclosure complaint, writs of executions, and motions to reassess," Defendant violated "the mortgages' explicit language…" (AC ¶ 60.) As Plaintiff explains, "[a] mere entry on the Prothonotary's docket based on a Writ of Execution is not sufficient to obtain an attorney fee award." (AC ¶ 61.) Thus, argues Plaintiff, the "attorney's fees included with the judgment, and subsequently as part

4

of the reissue of the writ(s) of execution and motions to reassess" should not have been added to the judgment against Plaintiff. (AC ¶¶ 41-43.)

Second, under Count III, Plaintiff argues that the inclusion of the attorneys' fees in the default judgment, and the incorporation of same in the reissued writs, violated the Fair Debt Collection Practices Act (the "FDCPA"). (AC ¶ 78.) The Court notes that none of the reissued writs added any attorneys' fees beyond those entered in the default judgment. The only additions to the default judgment in the subsequent writs were related to accumulated interest.

Third, in Count II, Plaintiff argues that Defendants violated the FDCPA by "charging homeowners post-judgment interest that had not been incurred," as such charges were not authorized by the Mortgage, and thus, were illegal under the FDCPA. (AC ¶ 66.) Plaintiff is referring to the fact that the reissued writs included interest up to the date of the sheriff's sale, even when the date of the sheriff's sale was after the date of the reissuance of the writ. In addition, Plaintiff argues that the rate used to determine the interest was improperly inflated. (AC ¶ 71.)

On September 22, 2015, MWC filed an offer of judgment pursuant to Federal Rule of Civil Procedure 68. (Dkt No. 26.)

### III.   Discussion

The Court finds the application of the *Rooker-Feldman* doctrine dispositive. The Court lacks subject matter jurisdiction over Plaintiff's Amended Complaint; the Amended Complaint is dismissed.

### A. *Rooker-Feldman* Legal Standard

Under the *Rooker-Feldman* doctrine, this Court lacks subject-matter jurisdiction over cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)). *Rooker-Feldman* is a "narrow doctrine" that "applies only in limited circumstances." *Lance v. Dennis*, 546 U.S. 459, 464-66 (2006). "Whether a judgment has been rendered in a state foreclosure action is a question of state law." *Gage v. Wells Fargo Bank, N.A. AS*, 2011 WL 4073877, at *4 (D.N.J. 2011) (citing *Randall v. Bank One*, 358 B.R. 145, 159 n. 9 (Bankr. E.D. Pa. 2006)).The Third Circuit has stated:

[A] claim is barred by *Rooker-Feldman* under two circumstances: first, if the federal claim was actually litigated in state court prior to the filing of the federal action or, second, if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong. In either case, *Rooker-Feldman* divests the District Court of subject matter jurisdiction over those claims.

[...]

A federal claim is inextricably intertwined with an issue adjudicated by a state court when: (1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment…. In other words, *Rooker-Feldman* does not allow a plaintiff to seek relief that, if granted, would prevent a state court from enforcing its own orders.

*In re Knapper*, 407 F.3d 573, 580 (3d Cir. 20054) (internal citations omitted).

Thus, there are four requirements that must be met for the *Rooker-Feldman* doctrine to apply: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the statement judgments." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (quoting *Exxon Mobil*, 544 U.S. at 284) (internal citations omitted)).

"The second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim." *Id.* As to the second factor, the Court must determine whether the suit complains of an injury "produced by a state-court judgment," which would be barred by *Rooker-Feldman*, or one that is produced by a defendant's actions and "simply ratified, acquiesced in, or left unpunished" by a state court judgment, which would not be barred by *Rooker-Feldman*. *Great Western Mining*, 615 F.3d at 167 (quoting *Hoblock v. Albany County Bd. Of Elections*, 422 F.3d 77, 87-88 (2d Cir. 2005)). "The question is: was the source of the injury the defendant's conduct or the state court judgment." *Minton v. Cach, LLC*, 2014 WL 4764183, at *3 (E.D. Pa. 2014).

### B. *Rooker-Feldman* removes this Court's subject matter jurisdiction.

Plaintiff's claims concern two purported transgressions by Defendants: (1) the incorporation of attorneys' fees without a lodestar analysis in the default judgment and subsequent reissued writs, and (2) the addition of interest to the default judgment in the reissued writs.

Default judgments in foreclosure actions rendered prior to any sale trigger the application of *Rooker-Feldman*. *See generally In re Knapper*, 407 F.3d at 580. Generally, "*Rooker-Feldman* bars review of state court mortgage foreclosure proceedings." *Easley v. New Century Mortg. Corp.*, 2009 WL 2256692, at *1 (E.D. Pa. 2009). In this case, Plaintiff did not move to open the default judgment, nor did she appeal the judgment. She never challenged the writs of execution. The fact that the default judgment and the writs of execution were issued by an Article I Prothonotary, and not by a court, is irrelevant to this analysis. *See generally In re Knapper*, 407 F.3d at 580-81; *see also Moncrief v. Chase Manhattan Mortg. Corp.*, 275 F. App'x 149, 153 (3d Cir. 2008). Thus, it is clear that any claims about the amounts in the default judgment and the writs of execution are barred under the "actually litigated" prong of the *Rooker-Feldman* doctrine.

Plaintiff argues that her injuries are the result of Defendants' activities after the entrance of the default judgment; thus, the Court would not need to review the default judgment. As to the attorneys' fees issue, this is patently impossible. The default judgment included attorneys' fees. In every subsequent writ of execution of the default judgment, no additional attorneys' fees were added. Plaintiff is complaining about attorneys' fees that were approved, and finalized, in the default judgment. In order for the Court to find that Defendants breached their contract with Plaintiff, or violated the FDCPA, because of their efforts to collect on the attorneys' fees approved in the default judgment, the Court would necessarily need to find that the default judgment was improperly granted. That is exactly the behavior barred by the *Rooker-Feldman* doctrine.

As to the prospective interest issue, the *Rooker-Feldman* doctrine again applies. Plaintiff argues her injuries relate only to post-default judgment amendments entered via reissuances of writs of execution. She argues that adjudication of these ills would only require review of Defendants' actions related to the reissued writs, and not of the default judgment. However, Plaintiff could have challenged the writs of execution in state court. She did not. Thus, the writs themselves are final state court judgments. Moreover, the reissued writs of execution are just the enforcement mechanism of the default judgment. The interest she complains of was not invented anew in the writs, but rather, is the enforcement of the interest approved in the default judgment. Interest, by its very nature, requires principle. The principle in this case is the default judgment. Attacking the interest, attacks the default judgment. This claim is an attempt to use the FDCPA

to attack the underlying judgment. Plaintiff "cannot transform their action into one under the FDCPA and avoid the fact that they are complaining of an injury caused by the state court's foreclosure judgment." *Conte v. Mortgage Elec. Registration Sys.*, 2015 WL 1400997, at *3 (E.D. Pa. 2015).

The Court finds *Minton v. Cach, LLC* instructive. In *Minton*, the plaintiff similarly argued that sums of interest and attorney's fees were unlawfully included in a state court judgment. 2014 WL 4764183, at *3. The plaintiff argued that his injury was not caused by the state court judgment, but rather, by the defendant attempting to collect on the state court judgment, which included these purportedly unlawful attorneys' fees and interest. *Id.* The court found that *Rooker-Feldman* barred this claim. *Id.* (collecting cases). To find that the defendant "included unlawful interest and attorney's fees in the judgment amount, we would have to review and reject the state amount." *Id.* The same is true here.

**IV.    Conclusion**

In conclusion, the default judgment and the writs of execution could have been challenged in state court; but were not. The writs are entirely dependent upon the state court's default judgment order. Evaluating the writs of execution for fraud or breach of contract would require the Court to reopen the default judgment. Plaintiff's injuries were caused by the state court's mortgage foreclosure judgment. *Rooker-Feldman* removes this Court's subject matter jurisdiction as the cure for the ills alleged would be to review and reject the default judgment and subsequent writs of execution.

BY THE COURT:

/s/ C. Darnell Jones, II

_____

C. Darnell Jones, II    J.